UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **SHELDON JEFFERSON** | **CIVIL ACTION** |
| **VERSUS** | **NO. 23-2983** |
| **KEITH COOLEY, WARDEN** | **SECTION "R"(4)** |

### REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations pursuant to **28 U.S.C. § 636(b)(1)(B) and (C)**, and as applicable, **Rule 8(b) of the Rules Governing Section 2254 Cases**. Upon review of the entire record,[1] the Court has determined that this matter can be disposed of without an evidentiary hearing. *See* 28 U.S.C. § 2254(e)(2) (2006).[2]

### I.  Factual Background

The Petitioner, Sheldon Jefferson ("Jefferson"), is a convicted inmate incarcerated in the Allen Correctional Center in Kinder, Louisiana. On February 28, 2013, Jefferson and two co-defendants were charged in Orleans Parish with four counts of aggravated rape, one count of armed robbery, and one count of aggravated kidnapping.[3] Jefferson initially entered a plea of not guilty in the case.[4]

---

[1] The State Court Record was electronically filed by the State at Rec. Doc. 15 in parts Nos. 15-1 through 15-6.

[2] Under 28 U.S.C. § 2254(e)(2), an evidentiary hearing is held only when the petitioner shows that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by the exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

[3] Rec. Doc. 15-1 at 70-71, Bill of Indictment, 2/28/13; *id.* at 2, Grand Jury Return of Indictments, 2/28/13.

[4] Rec. Doc. 15-1 at 64, Minute Entry, 3/6/13.

The record reflects[5] that on February 4, 2013, the victim, who was getting out of her vehicle, was approached by two black males, Jefferson and Joseph Davis, who demanded money. Joseph Davis possessed a silver handgun. Finding that the victim had no money, Jefferson and Joseph Davis forced the victim into a vehicle driven by a third perpetrator, Christopher Davis. All three perpetrators threatened the victim's life if she failed to cooperate. Jefferson and Joseph Davis sat in the backseat of the vehicle on either side of the victim. Christopher Davis drove the vehicle to various ATM's where the perpetrators attempted to use the victim's debit card. Jefferson and Joseph Davis forced the victim to perform oral sex on them. Christopher Davis supplied Joseph Davis with a condom, and Joseph Davis forced the victim to have penile/vaginal sex with him on two occasions. Jefferson, who did not use a condom, forced the victim to have penile/vaginal sex with him as well. Christopher Davis drove the vehicle around while the sexual assaults occurred. After they relocated to the place where they had abducted the victim, the perpetrators took her keys and other property including her phone. Jefferson and Joseph Davis forced the victim out of the perpetrator vehicle, took her vehicle, and fled the scene.

A photograph obtained from an ATM machine led to the arrest of Jefferson, who turned himself in and admitted that he forced the victim into the car and raped her. Jefferson identified one of the co-defendants as Joseph Davis. Joseph Davis and the Christopher Davis were arrested and the weapon was recovered. Jefferson could not be excluded as a major contributor of DNA profiles obtained from vaginal, cervical and rectal swabs of the victim.

---

[5] The facts were taken from the Trial Court's decisions on Jefferson's post-conviction applications, the police report, and the Scientific Analysis Report. Rec. Doc. 15-1 at 120, Ruling, 5/15; *id.* at 120, Ruling, 11/12/15; *id.* at 188, New Orleans Police Department Gist Sheet, 2/7/13; *id.* at 189-91, Louisiana State Police Crime Laboratory Scientific Analysis Report, SP-001415-3, 4/1/13.

On September 11, 2013, the prosecution amended the aggravated rape charges to forcible rape and the aggravated kidnapping charge to second degree kidnapping.[6] On that same date, Jefferson entered a guilty plea to four counts of forcible rape, one count of armed robbery, and one count of second degree kidnapping.[7] The Trial Court sentenced Jefferson to thirty years imprisonment at hard labor as to each count without the benefit of probation, parole or suspension of sentence.[8] Jefferson did not file a direct appeal. Therefore, his conviction became final under federal law thirty days later on October 11, 2013.[9] *Roberts v. Cockrell*, 319 F.3d 690, 694-95 (5th Cir. 2003) (under federal habeas law, a conviction is final when the state defendant does not timely proceed to the next available step in the state appeal process); *see Cousin v. Lensing*, 310 F.3d 843, 845 (5th Cir. 2002) (petitioner's guilty pleas became final at the end of the period for filing a notice of appeal under La. Code Crim. P. art. 914).

On September 29, 2014, Jefferson filed a motion for production of documents.[10] On November 9, 2015, the Trial Court granted the motion.[11]

---

[6] Rec. Doc. 15-1 at 70-71, Bill of Indictment as amended, 9/13/13; *id.* at 29-30, Amended Guilty Plea & Sentencing Minutes, 9/16/13; *id.* at 124, Guilty Plea & Sentencing Transcript, 9/11/13; *id.* at 8, Docket Master Entry, 9/11/13; *id.*, Docket Master Entry, 9/16/13.

[7] Rec. Doc. 15-1, at 29-30, Amended Guilty Plea & Sentencing Minutes, 9/16/13; *id.* at 123-41, Guilty Plea & Sentencing Transcript, 9/11/13; *id.* at 239, Waiver of Rights – Plea of Guilty, 9/11/13; *id.* at 8, Docket Master Entry, 9/11/13; *id.*, Docket Master Entry, 9/16/13.

[8] *Id.*; *id.* at 138-41, Guilty Plea & Sentencing Transcript, 9/11/13; *id.* at 242, Sentence of the Court, 9/11/13; *id.* at 242, Amended Sentence of the Court, 9/16/13.

[9] Louisiana law provides that a guilty plea waives all non-jurisdictional defects in the proceedings prior to the plea and precludes review of such defects on appeal or on post-conviction relief. *State v. Crosby*, 338 So. 2d 584, 588 (La. 1976). However, where grounds do exist for appeal, Louisiana law requires a criminal defendant to move for leave to appeal within thirty (30) days of the order or judgment being appealed or a ruling on a timely motion to reconsider a sentence. La. Code Crim. P. art. 914 (as amended La. Acts 2003, No. 949, § 1). Failure to move timely for appeal under art. 914 rendered the conviction and sentence final at the expiration of that period. *State v. Counterman*, 475 So. 2d 336, 338 (La. 1985).

[10] Rec. Doc. 15-1 at 91-92, Motion for Production of *Boykin* Exam, Guilty Plea, and Sentencing Colloquy Verbatim Copy, 9/29/14.

[11] Rec. Doc. 15-1 at 93, Order, 11/9/15.

On May 28, 2015 Jefferson submitted two identical applications for post-conviction relief asserting the following claims for relief: (1) his guilty plea was not knowingly and intelligently entered; (2) ineffective assistance of counsel in failing to adequately conduct pretrial investigation, advocate and subject the prosecution's case to meaningful adversarial testing, and preserve his right to seek review for lack of evidence, and in leading him to believe that the State had witnesses that the jury would believe over Jefferson; and (3) excessive sentence.[12] He also sought an out-of-time appeal.[13] The Trial Court denied relief.[14]

On September 30, 2015, the Trial Court again denied Jefferson's application for post-conviction relief and request for out-of-time appeal.[15] On November 12, 2015, the Trial Court issued a Ruling again denying the application for post-conviction relief and request for out-of-time appeal.[16]

On March 8, 2016, Jefferson filed a petition for writ of mandamus related to an application for post-conviction relief he claimed he filed on May 27, 2015, but Jefferson attached as an exhibit an application for post-conviction relief with a signature date of May 28, 2015.[17] On April 6, 2016,

---

[12] Rec. Doc. 15-1 at 77-88, Uniform Application for Post-Conviction Relief, 6/3/15 (signed May 27, 2015; certificate of service dated 5/28/15); *id.* at 106-118, Uniform Application for Post-Conviction Relief, 6/3/15 (signed May 27, 2015; certificate of service dated 5/28/15). These applications each include a file stamp on the first page, albeit in slightly different places, and the case number on each is in different handwriting. *See id.* at 77; *id.* at 106, Uniform Application for Post-Conviction Relief, 6/3/15 (signed May 27, 2015; certificate of service dated 5/28/15).

[13] *Id.; id.* at 106-118, Uniform Application for Post-Conviction Relief, 6/3/15 (signed May 27, 2015; certificate of service dated 5/28/15).

[14] Rec. Doc. 15-1 at 120-22, Ruling, 5/15.

[15] Rec. Doc. 15-1 at 89, Order, 9/30/15.

[16] Rec. Doc. 15-1 at 120-22, Ruling, 11/12/15.

[17] Rec. Doc. 15-2 at 3-18, Petition for Writ of Mandamus, 2016-K-0273, 3/21/16 (signed 3/8/16). The application for post-conviction relief that was included as an exhibit to the petition for writ of mandamus is identical

the Louisiana Fourth Circuit Court of Appeals found that the Trial Court denied Jefferson's application for post-conviction relief on November 12, 2015, and therefore denied his petition for writ of mandamus as moot.[18] Jefferson did not file a related writ application with the Louisiana Supreme Court.

On March 21, 2018, Jefferson sent a letter to the Trial Court claiming that he had not received a ruling on his application for post-conviction relief filed in "2015."[19] On March 26, 2018, the Trial Court sent a letter to Jefferson with a copy of the November 12, 2015 ruling.[20] Jefferson did not seek review of that ruling.

Jefferson next filed a motion to correct illegal sentence in June 2018 claiming that his sentence was indeterminate as the court failed to make clear whether it had imposed a mandatory additional five years imprisonment pursuant to La. Rev. Stat. § 14:64.3.[21] He filed a related petition for writ of mandamus on October 23, 2018.[22] On November 15, 2018, the Louisiana

---

to the two applications for post-conviction relief filed on May 28, 2015 and file stamped on June 3, 2015 except as follows: (1) Jefferson's signature is dated May 28, 2015 while Jefferson's signature on the other two applications is dated May 27, 2015; and (2) the application does not include either a notarized affidavit or a file stamp. *Compare* Rec. Doc. 15-2 at 7-18, Uniform Application for Post-Conviction Relief, signed 6/28/15, *with* Rec. Doc. 15-1 at 77-88, Uniform Application for Post-Conviction Relief, 6/3/15 (signed May 27, 2015; certificate of service dated 5/28/15), *and id.* at 106-118, Uniform Application for Post-Conviction Relief, 6/3/15 (signed May 27, 2015; certificate of service dated 5/28/15).

[18] Rec. Doc. 15-1 at 157, La. 4th Cir. Order, 2016-K-0273, 3/30/16.

[19] Rec. Doc. 15-1 at 10, Docket Master Entry, 3/21/18; *id.* at 12, Minute Entry, 3/21/18; *id.* at 75, Letter, undated.

[20] Rec. Doc. 15-1 at 10, Docket Master Entry, 3/26/18; *id.* at 11, Minute Entry, 3/26/18; *id.* at 76, Letter from Trial Court, 3/26/18.

[21] Rec. Doc. 15-3 at 6-10, Motion to Correct Illegal Sentence, 6/18; Rec. Doc. 15-4 at 22, Docket Master Entry, 6/26/18.

[22] Rec. Doc. 15-3 at 2-11, Petition for Writ of Mandamus, 2018-K-0947, 11/6/18 (signed 10/23/18).

Fourth Circuit Court of Appeals granted the writ application and directed the Trial Court to act.[23] On January 23, 2019, the Trial Court denied the motion and clarified the sentence by stating that the five-year enhancement was included in the thirty-year plea, and that the sentenced for armed robbery was twenty-five years plus five years for the enhancement for a total of thirty years.[24] On May 2, 2019, the Trial Court denied Jefferson's notice of intent to seek supervisory writs as untimely.[25]

In March 2022, Jefferson filed a motion for annulment for vices of form claiming: (1) he was denied due process when the Trial Court allowed the prosecution to amend the charges; (2) misjoinder of offenses; (3) the Trial Court failed to conform each element of the offense; and (4) a jury was required to find him guilty of the offenses.[26] On June 23, 2022, Jefferson filed a petition for writ of mandamus.[27] On July 2, 2022, the Louisiana Fourth Circuit granted the writ application and ordered the state district court to act on the motion.[28] On July 25, 2022, the Trial Court denied the motion.[29]

Jefferson filed a petition for writ of supervisory review of the Trial Court's ruling.[30] On December 13, 2022, the Louisiana Fourth Circuit denied relief.[31] On June 7, 2023, the Louisiana

---

[23] Rec. Doc. 15-3 at 1, La. 4th Cir. Order, 2018-K-0947, 11/15/18.

[24] Rec. Doc. 15-4 at 23, Docket Master Entry, 1/23/19.

[25] Rec. Doc. 15-4 at 23, Docket Master Entry, 5/2/19.

[26] Rec. Doc. 15-6 at 15-16, Motion for Annulment for Vices of Form; Time for Action, undated.

[27] Rec. Doc. 15-4 at 3-23, Petition for Writ of Mandamus, 2022-K-0486, 7/15/22 (signed 6/23/22).

[28] Rec. Doc. 15-4 at 1-2, La. 4th Cir. Order, 2022-K-0486, 7/20/22.

[29] Rec. Doc. 15-6 at 14, Ruling, 7/25/22.

[30] Rec. Doc. 15-5 at 2-11, Petition for Writ of Supervisory Review, 2022-K-0807, 11/28/22

Supreme Court found that the application was not timely filed in the state district court and that Jefferson failed to carry his burden to show that an exception applied, citing La. Code Crim. P. art 930.8 and *State ex rel. Glover v. State*, 660 So. 2d 1189 (La. 1996).[32]

## II. Federal Habeas Petition

On July 18, 2023, Jefferson filed his petition for federal habeas corpus.[33] Jefferson claims: (1) the indictment was defective; (2) misjoinder of offenses; (3) "failure [to] conform nature and clause of each count and prosecutor amended charges;" and (4) "the indictment does not show each element offenses charged."[34]

The State filed a response claiming that Jefferson's petition is untimely.[35] Alternatively, the State claims that, because Jefferson did not brief his claims, it is unclear if they are exhausted.[36] It argues that, if Jefferson intended to raise the same claims in his motion for annulment for vices of form, the claims are procedurally barred because the Louisiana Supreme Court found his motion to be untimely.[37] The State further argues that Jefferson's claims of defective indictment, misjoinder of claims, failure to conform nature and clause of each count, and failure to show each element of the offenses charged are matters of state law and are therefore not cognizable.[38]

---

[31] Rec. Doc. 15-5 at 1, La. App. 4th Cir. Order, 2022-K-0807, 12/13/22.

[32] *State v. Jefferson*, 361 So. 3d 969 (La. 2023); Rec. Doc. 15-6 at 1-2, La. S. Ct. Order, 2023-KH-00162, 6/7/23; *id.* at 3-22, Writ Application, 23-KH-0162, 1/12/23.

[33] Rec. Docs. 3.

[34] *Id.* at 5-6, 8, 10.

[35] Rec. Doc. 16.

[36] *Id.* at 13.

[37] *Id.* at 13-14.

[38] *Id.* at 14-15.

Jefferson did not file a reply brief.

### III.    General Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214,[39] applies to this petition, which was filed in this Court under the mailbox rule on July 18, 2023.[40] The threshold questions on habeas review under the amended statute are whether the petition is timely and whether the claim raised by the petitioner was adjudicated on the merits in state court; *i.e.*, the petitioner must have exhausted state court remedies and the claims must not be in "procedural default." *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

The State asserts and the record shows that Jefferson's federal petition was not timely filed under the AEDPA. For the following reasons, Jefferson's petition should be dismissed as time-barred.

### IV.    Statute of Limitations

The AEDPA codified in 28 U.S.C. § 2244(d)(1)(A) requires a petitioner to bring his § 2254 claim within one year of the date the state court conviction became final or one year.[41] *Duncan v.*

---

[39] The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254, and applied to habeas petitions filed after its effective date, April 24, 1996. *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)). The AEDPA, signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law. *United States v. Sherrod*, 964 F.2d 1501, 1505 n.11 (5th Cir. 1992).

[40] The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999); *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995). Jefferson signed his pleadings on July 18, 2023, which the earliest date he could have given his petition to prison officials for mailing.

[41] The statute of limitations provision of the AEDPA provides for other triggers which do not apply here:

8

*Walker*, 533 U.S. 167, 176-80 (2001). As stated above, Jefferson's conviction was final under federal law on October 11, 2013, when his time to file a direct appeal expired. Pursuant to § 2244, Jefferson had one year from that date, or until October 14, 2014, to timely file a federal petition for habeas corpus relief, which he did not do.[42] Thus, literal application of the statute would bar Jefferson's petition as of that date unless he is entitled to tolling as provided for under the AEDPA.

A.     **Statutory Tolling**

Section 2244(d)(2) provides that the time during which a properly filed application for state post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation. *See* 28 U.S.C. § 2244(d)(2). In order for a state post-conviction application to be considered "properly filed" within the meaning

---

(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of-
  A. the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

  B. the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State actions;

  C. the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

  D. the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

[42] Because the 365th day of the limitations period fell on a Saturday, and Monday, October 13, 2014 was a legal holiday, Jefferson's deadline was extended through the following Tuesday, October 14, 2014. *See Flanagan v. Johnson*, 154 F.3d 196, 202 (5th Cir. 1998) ("We hold that [Fed.R.Civ.P.] 6(a) applies to the computation of the one year limitation period in § 2244(d) of AEDPA."); Fed. R. Civ. P. 6(a) (if the last day of an applicable period is a Saturday, a Sunday, a legal holiday, or a day when the clerk's office is inaccessible, the period runs until the end of the next day that is not one of those days).

9

of § 2244(d)(2), the applicant must have complied with all of the State's procedural requirements, such as timeliness and place of filing. *Pace v. DiGuglielmo*, 544 U.S. 408, 413-14 (2005); *Williams v. Cain*, 217 F.3d 303, 306-08 & n.4 (5th Cir. 2000) (quoting *Smith v. Ward*, 209 F.3d 383, 384-85 (5th Cir. 2000)); *Villegas v. Johnson*, 184 F.3d 467, 468-69 (5th Cir. 1999), *reh'g denied*, 196 F.3d 1259 (5th Cir. 1999). For purposes of the AEDPA, a timeliness calculation in Louisiana requires the application of the prison mailbox rule to state court pleadings. *Causey v. Cain*, 450 F.3d 601, 604-05 (5th Cir. 2006). The Court has applied this rule in presenting the procedural history recited above with the exception of when Hayes was represented by counsel.

A matter is "pending" for § 2244(d)(2) purposes "as long as the ordinary state collateral review process is 'in continuance.' " *Carey v. Saffold*, 536 U.S. 214, 219-20 (2002); *Williams*, 217 F.3d at 310 (quoting *Bennett v. Artuz*, 199 F.3d 116, 120 (2d Cir. 1999)) (finding that a matter is "pending" for Section 2244(d)(2) purposes until further appellate review is unavailable under Louisiana's procedures); *see also Melancon v. Kaylo*, 259 F.3d 401, 405 (5th Cir. 2001).

The phrase "other collateral review" in the statute refers to state court proceedings challenging the pertinent judgment subsequently challenged in the federal habeas petition. *Dillworth v. Johnson*, 215 F.3d 497, 501 (5th Cir. 2000) (finding that a state habeas petition challenging a prior conviction in one county was other collateral review even though filed as a challenge to a second conviction in a different county); *Nara v. Frank*, 264 F.3d 310, 316 (3d Cir. 2001), *overruled on other grounds by Carey*, 536 U.S. at 214 (finding that a motion to withdraw a guilty plea is "other collateral review"). A "pertinent judgment or claim" requires that the state filings for which tolling is sought must have challenged the same conviction being challenged in the federal habeas corpus petition and must have addressed the same substantive claims now being

raised in the federal habeas corpus petition. *Godfrey v. Dretke*, 396 F.3d 681, 687-88 (5th Cir. 2005).

In addition, a petitioner's efforts to obtain copies of documents and transcripts from the state courts do *not* constitute other collateral review for purposes of the AEDPA tolling calculation. *See Osborne v. Boone*, 176 F.3d 489, 1999 WL 203523 (10th Cir. Apr. 12, 1999) (Table, Text in Westlaw) (motion for transcript copies is not "other collateral review" for tolling purposes); *Brown v. Cain*, 112 F. Supp. 2d 585, 587 (E.D. La. 2000), *aff'd*, 239 F.3d 365 (5th Cir. 2000); *Gerrets v. Futrell*, No. 01-3080, 2002 WL 63541 (E.D. La. Jan. 16, 2002); *Jones v. Johnson*, No. 01-CV-0115, 2001 WL 1006062, at *3 (N.D. Tex. Aug. 13, 2001) (petitioner should file application and then continue to gather support and transcripts); *Grayson v. Grayson*, 185 F. Supp. 2d 747, 751-52 (E.D. Mich. Jan. 3, 2002) (delay in receipt of transcript not required to file the application, does not warrant equitable tolling). Thus, Jefferson's motion for production of documents on September 29, 2014 did not toll the limitations period.

In Jefferson's case, the AEDPA filing period began to run on October 12, 2013, the day after his conviction was final under federal law, and continued to do so for one year without interruption through October 14, 2014 when it expired. During that period, Jefferson had no properly filed state post-conviction or other collateral review pending in any state court to interrupt the running of the AEDPA one-year filing period.

Jefferson did not first file for post-conviction relief until May 28, 2015. Thus, Jefferson allowed another seven months to pass after the expiration of the AEDPA limitations period before he filed for post-conviction relief. Even after he received a copy of the Trial Court's November

11

12, 2015 ruling (the third time the Trial Court denied post-conviction relief) in March 2018, Jefferson waited another five years to submit his federal petition.

First, he filed two separate motions in the state district court seeking post-conviction relief and sought review of the denials. Only after he was unsuccessful in seeking post-conviction relief through those motions did he file his federal habeas petition.

Although Jefferson filed for state post-conviction relief after the AEDPA limitations period expired, and on multiple occasions, the applications and motions filed after the AEDPA limitations period expired do not afford him any tolling benefit. *See Madden v. Thaler*, 521 F. App'x 316, 320 (5th Cir. 2013); *Scott v. Johnson*, 227 F.3d 260, 263 (5th Cir. 2000); *Magee v. Cain*, No. 99-3867, 2000 WL 1023423, at *4 (E.D. La. Jul. 24, 2000) (citing *Williams v. Cain*, No. 00-536, 2000 WL 863132, at *2 (E.D. La. Jun. 27, 2000)), *aff'd*, 253 F.3d 702 (5th Cir. 2001). Further, the filing of a state petition after the AEDPA filing period has expired also does *not* restart the AEDPA time-clock. *See Scott*, 227 F.3d at 263 (a filing made after the expiration of the AEDPA one-year filing period does not renew or extend the AEDPA filing period or provide a petitioner any tolling benefits); *Higginbotham v. King*, 592 F. App'x 313, 314 (5th Cir. 2015) (same).

The AEDPA limitations period therefore expired on October 14, 2014, long before Jefferson filed his federal petition on July 18, 2023. Simply put, once the federal limitations period expired, "[t]here was nothing to toll." *Butler*, 533 F.3d at 318.

Therefore, Jefferson's federal petition, filed under the mailbox rule on July 18, 2023, was filed more than eight years after the AEDPA filing period expired on October 14, 2013. His untimely federal petition should be dismissed with prejudice unless he meets another exception or excuse to the running of the AEDPA limitations period.

B. **No Equitable Tolling**

The post-AEDPA jurisprudence also provides for equitable tolling of the AEDPA limitations period where rare or extraordinary circumstances may have prevented a diligent petitioner from timely pursuing federal habeas corpus. *Pace*, 544 U.S. at 419; *Fisher v. Johnson*, 174 F.3d 710, 713 (5th Cir. 1999); *Cantu-Tzin v. Johnson*, 162 F.3d 295, 299 (5th Cir. 1998); *Davis v. Johnson*, 158 F.3d 806, 810-11 (5th Cir. 1998), *cert. denied*, 526 U.S. 1074 (1999).

However, equitable tolling is warranted only in situations where the petitioner was actively misled or is prevented in some extraordinary circumstance outside of his control from asserting his rights. *Pace*, 544 U.S. at 418-19; *see Cousin v. Lensing*, 310 F.3d 843, 848 (5th Cir. 2002); *see Holland v. Florida*, 560 U.S. 631, 652-53 (2010) (finding that equitable tolling was warranted where attorney was more than negligent when he failed to satisfy professional standards of care by ignoring the client's requests to timely file a federal petition and in failing to communicate with the client over a period of years in spite of the client's letters); *Hardy v. Quarterman*, 577 F.3d 596, 599-600 (5th Cir. 2009) (finding that equitable tolling was warranted where petitioner suffered a significant state-created delay when, for nearly one year, the state appeals court failed in its duty under Texas law to inform him that his state habeas petition had been denied, petitioner diligently pursued federal habeas relief, and he persistently inquired to the court.); *United States v. Wynn*, 292 F.3d 226, 230 (5th Cir. 2002) (finding that tolling was warranted when defendant was deceived by attorney into believing that a timely motion to vacate was filed); *Coleman v. Johnson*, 184 F.3d 398, 402 (5th Cir. 1999) (quotation omitted) ("A garden variety claim of excusable neglect does not support equitable tolling."); *Fisher*, 174 F.3d at 715 (finding that tolling is not justified during petitioner's seventeen-day stay in psychiatric ward, during which he was

13

confined, medicated, separated from his glasses and thus rendered legally blind, and denied meaningful access to the courts); *Cantu-Tzin*, 162 F.3d at 300 (finding that State's alleged failure to appoint competent habeas counsel did not justify tolling); *Davis*, 158 F.3d at 808 n.2 (assuming without deciding that equitable tolling was warranted when federal district court three times extended the deadline to file habeas corpus petition beyond expiration of AEDPA grace period). A habeas petitioner bears the burden of proof to establish entitlement to equitable tolling. *Alexander v. Cockrell*, 294 F.3d 626, 629 (5th Cir. 2002).

Jefferson does not argue that equitable tolling applies in this case. Furthermore, the record shows an inexplicable lack of diligence on his part in filing for federal habeas corpus relief and no extraordinary circumstances that would warrant equitable tolling. It is well-settled that mistake, ignorance of the law, and a prisoner's pro se status and lack of legal training do not constitute rare and exceptional circumstances warranting equitable tolling. *Johnson v. Quarterman*, 483 F.3d 278, 286 (5th Cir. 2007); *Cousin v. Lensing*, 310 F.3d 843, 849 (5th Cir. 2002); *Fierro v. Cockrell*, 294 F.3d 674, 682 (5th Cir. 2002); *Felder v. Johnson*, 204 F.3d 168, 171 (5th Cir. 2000); *see also Tate v. Parker*, 439 F. App'x 375 (5th Cir. 2011) ("The alleged extraordinary circumstances endured by Tate, such as ignorance of the law, lack of knowledge of filing deadlines, a claim of actual innocence, temporary denial of access to research materials or the law library, and inadequacies in the prison law library, are not sufficient to warrant equitable tolling"); *Mathis v. Thaler*, 616 F.3d 461, 474 (5th Cir. 2010) ([E]quitable tolling "is not intended for those who sleep on their rights"). Accordingly, the Court finds that Jefferson is not entitled to equitable tolling.

## C.     <u>No Other Excuse or Exception to Time Bar</u>

The Supreme Court has held that "actual innocence, if proved, serves as a gateway through which a petitioner may pass" notwithstanding the "expiration of the statute of limitations" under the AEDPA. *McQuiggin*, 569 U.S. at 386. "This rule, or fundamental miscarriage of justice exception, is grounded in the 'equitable discretion' of habeas courts to see that federal constitutional errors do not result in the incarceration of innocent persons." *Id.* at 392, (quoting *Herrera v. Collins*, 506 U.S. 390, 404 (1993)).

The Supreme Court, however, has cautioned that "[t]he miscarriage of justice exception, we underscore, applies to a severely confined category: cases in which new evidence shows 'it is more likely than not that no reasonable juror would have convicted [the petitioner].' " *Id.* at 394-95 (quoting *Schlup v. Delo*, 513 U.S. 298, 329 (1995)). The Supreme Court has made clear that "habeas corpus petitions that advance a substantial claim of actual innocence are extremely rare." *Schlup*, 513 U.S. at 321.

> The United States Fifth Circuit Court of Appeals has explained:
>
> This exception's demanding standard requires evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error. The standard is seldom met.
>
> An actual-innocence claim is only established when it is shown that, in the light of newly-discovered evidence, it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt. Therefore, a credible claim must be supported by new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial. Actual innocence is then demonstrated only when the court scrutinizes the likely impact on reasonable jurors of the overall, newly supplemented record to conclude that, in the light of all evidence – both the evidence presented at trial and that newly discovered – no juror, acting reasonably, would have voted to find petitioner guilty beyond a reasonable doubt.

*Floyd v. Vannoy*, 894 F.3d 143, 154-55 (5th Cir. 2018) (citations, quotation marks, and brackets omitted).

Jefferson does not invoke *McQuiggin* nor does he claim in his habeas petition that he is actually innocent. By entering his unconditional guilty plea, Jefferson has already conceded under oath that he in fact committed and was guilty of the crimes of which he stands convicted. Therefore, even if *McQuiggin* applies in the context of a guilty plea, Jefferson would face a daunting burden to present a credible "actual innocence" claim. As the United States Supreme Court has explained: "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." *Schlup*, 513 U.S. at 324. "[I]n virtually every case, the allegation of actual innocence has been summarily rejected." *Calderon v. Thompson*, 523 U.S. 538, 559 (1998) (citation omitted).

Here, Jefferson has presented no new evidence whatsoever of actual innocence. Accordingly, he has not met "the threshold requirement" for *McQuiggin* to apply. *McQuiggin*, 569 U.S. at 386. As a result, the "actual innocence" exception does not aid him.

Jefferson's federal petition deemed filed on July 18, 2023, was not timely filed within the one-year AEDPA statute of limitations period which expired on October 14, 2013. There is no statutory tolling, equitable tolling, or other exception applicable to or that would excuse his untimely filing. Jefferson's petition was not timely filed and should be dismissed for that reason.

**V.      Recommendation**

For the foregoing reasons, it is **RECOMMENDED** that Sheldon Jefferson's petition for the issuance of a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 be **DISMISSED WITH PREJUDICE** as time-barred.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).[43]

New Orleans, Louisiana, this 6th day of February, 2024.

_____
**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**

---

[43] *Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.